[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants, the town of Coventry, the Coventry Town Council, John Elsesser, Joan Lewis, Alan Koepke, and Richard A. Ashley, move for summary judgment on the ground that the agreement upon which the plaintiffs, Susan and Norvald Oygard, base their claims is invalid and unenforceable. This motion requires the court to determine whether a municipality can validly bind itself, by contract with a private citizen, to perform a discretionary, governmental function in a particular way or to the satisfaction of that private citizen. The court concludes that a municipality cannot legitimately enter such an agreement.
Summary judgment enters where the pleadings and materials submitted in conjunction with the motion show that no genuine dispute as to material facts exists and that the movant is entitled to judgment as a matter of law, Practice Book § 17-49. CT Page 10714
The following facts and history are uncontroverted. During the summer of 1986, Koepke obtained a zoning permit from the Coventry zoning enforcement officer allowing the erection of a 150 foot radio antenna on his property located in that town. On August 12, 1986, Susan Oygard appealed the decision to issue that permit to the Coventry Zoning Board of Appeals (ZBA). On September 16, 1986, a public hearing was held, and the ZBA overturned the zoning enforcement officer's action and revoked the permit. Koepke appealed the ZBA's decision to the Superior Court, and the court, Vasington, J., sustained the administrative appeal holding that Oygard's appeal to the ZBA was untimely and the notice of the public hearing was defective. Oygard appealed the trial court's ruling to the Appellate Court which affirmed the trial court on the ground of defective notice, Koepke v. ZBA, 25 Conn. App. 611 (1991). Our Supreme Court granted certification, agreed that the notice was defective, but reversed and remanded the matter to the Appellate Court to resolve the timeliness issue, Koepke v. ZBA, 223 Conn. 171 (1992). Again the Appellate Court affirmed the trial court holding that Oygard's appeal to the ZBA was tardy, Koepke v. ZBA, 30 Conn. App. 395 (1993). The Supreme Court granted certification and reversed the Appellate Court again holding that the appeal was timely filed with the ZBA. The Supreme Court, therefore ruled that the proper remedy for the defective notice aspect of the case was to order a new public hearing before the ZBA rather than simply reinstating the permit, Koepke v. ZBA, 230 Conn. 452 (1994). On June 6, 1995, the ZBA once again sustained Oygard's appeal and revoked the permit.
During the nine years of appeals, Koepke completed construction of the radio tower and used it. The tower was demolished after the second decision by the ZBA to revoke the permit. Dissatisfied with the town's perceived inaction regarding the continued existence of the tower in violation of the town's zoning regulations, the plaintiffs filed an action against the town. In November 1989, the Coventry Town Council authorized the Coventry Town Manager, Elsesser, to execute a resolution setthng the plaintiffs' claims against the town.
The agreement between the town and the plaintiffs obligated the plaintiffs to provide a general release for all of their claims stemming from the granting of the permit to Koepke, and, in exchange, the municipality would pay the plaintiffs $7,500, and, if the Appellate Court found that the permit was improper, the town would undertake appropriate legal action, within a reasonable time, against Koepke to remove the tower and "would prosecute such action to conclusion" including the pursuit of an appeal if it was in the town's best interest. The plaintiffs' provided the release, and the town paid the $7,500.
The present case arises from the plaintiffs' allegations that the town dishonored the portion of the agreement under which the town was to seek CT Page 10715 removal of the tower and instead colluded with Koepke to avoid its removal. In October 1995, the plaintiffs commenced this action against the municipality, its council members, the town Manager, and Koepke seeking monetary damages, under 42 U.S.C. § 1983, for violation of the plaintiffs' due process and equal protection rights and for tortious interference with a contact.
In November 1995, the defendants removed this case to the United States District Court. In that forum, the plaintiffs amended their complaint to add a federal racketeering count under RICO and a count against the town and its officials for a breach of the covenant of good faith and fair dealing. On March 23, 1998, the United States District Court for Connecticut, Squatrito, J., granted summary judgment for the defendants on the § 1983 and RICO claims. Because only nonfederal claims remained, the case was remanded to this court for resolution of the tortious interference and breach of covenant allegations.
Both of these claims hinge on the validity and enforceability of the underlying contract. The parties agree that the contract under scrutiny is the agreement memorialized by the council resolution of November 1989. The court holds that the portion of that agreement which is the basis of the plaintiffs' complaint is void as against public policy and law.
In the absence of specific statutory authority to do so, no power conferred upon a municipality can be transferred or delegated to others, nor can the municipality through its officers grant away by contract or otherwise to private individuals the power and responsibility to control the action and function properly pertaining to municipal government, 10E. McQuillin, Municipal Corporations (3d Ed. Rev. 1994) § 29.07. SeeNew Haven Taxpayers Research Council v. DePalma, 137 Conn. 331, 337
(1950). The established rule is that a municipality lacks the power to engage in contracts which control it in the performance of governmental function, Id. A governmental function is one undertaken because of a duty imposed upon the municipality for the welfare or protection of its citizens, Id. In particular, a town cannot bind itself to assist an individual in zoning matters requiring local governmental approval or in the exercise of police power, Id.
A municipality's general power to enter into contracts does not confer, by implication, the power to contract so as to embarrass or interfere with future control over matters as the public interest may require, Id. Nor can a municipality obligate itself, for compensation, to discharge a public duty, Id., § 29.08. Such contracts are absolutely void, Id. No recovery is permitted for breach of such a contract even if the municipality received a benefit, Id., and see Goldberg v. Penny, CT Page 10716558 N.Y.S.2d 564, 565 (AD. 2 Dept. 1990). A municipality cannot be estopped from contesting the validity of such agreements, Id. "A city is without power to enter into a contract rendering it liable for the negligence of its servants in the exercise of a governmental function,"Nashville Trust Co. v. Nashville, 188 S.W.2d 342, 344 (TN 1945).
These principles are especially pertinent in the field of zoning enforcement. In Connecticut, the local zoning commission or board "shall provide for the manner in which the zoning regulations shall be enforced, "General Statutes § 8-3 (e). A responsibility which is not given to the town council nor the town manager. Zoning regulations "shall be enforced by the [zoning enforcement] officer or official board or authority designated therein, "General Statutes § 8-12. A municipality cannot "validly contract away its authority to make future zoning determinations," Goldberg v. Penny, supra.
"A municipality cannot act as an individual does," Houston PetroleumCo. v. Automotive Products Credit Association, 87 A.2d 319, 322 (N.J. 1952). A contract between a municipality and a property owner should not enter into "the enactment or enforcement of zoning regulations," Id, (emphasis added).
Contracts with individuals which obligate a municipality to take a particular course with respect to zoning activities are contrary to public policy because they tend "to improperly influence the discretion to be exercised by a public official in determining that which is for the best interest of the public," Knoxville v. Ambrister, 263 S.W.2d 528, 530 (TN 1953). Such compacts are "plainly opposed to public policy,"; "strike at the very foundation of government"; and "destroy confidence in [the] integrity and discretion of public action," Id. A benign purpose, such as acquiring park land, is irrelevant, Id.
In the present case the agreement attempts to compel the town of Coventry to maintain a certain position in the future against allowing Koepke to have a permit to maintain a radio tower on his land and to pursue litigation, if necessary, to "prosecute such action to its conclusion." The zoning enforcement officer and the ZBA cannot be restricted in carrying out their duties by the contract with the plaintiffs. These zoning officials need to exercise judgment and discretion free from contractual strictures. Zoning officials may see the need to alter previous interpretations, positions, or courses of actions, depending on the availability of relevant information, the modification of legislative or decisional law, or budgetary considerations and constraints. These municipal agents must be free to assess the best manner to allocate limited resources and establish priorities. Contractual provisions such as the one in the present case CT Page 10717 interfere with that process.
If similar agreements were enforceable and valid, a private entity or individual could dictate or at least influence the path and pace which town zoning officials might take. These private parties may be disenchanted with the municipality's speed or vigor or view the town's actions as too lenient. The present case illustrates these dangers. Here the plaintiffs claim a right to extract monetary damages from the town for what the plaintiffs' perceive as foot dragging and collusion. It is against public policy to allow the agreement in this case to lock the zoning officials into a course of conduct in performing their governmental duties. As noted above, the fact that the town received a benefit, the general release, is immaterial, and the agreement remains void and unenforceable, Goldberg v. Penny, supra.
Because the contract which forms the foundation of the plaintiffs' claims is void, the defendants' motion for summary judgment is granted as to the two remaining counts.
Sferrazza, J.